

FILED
2014 Jul-15 PM 01:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| ALETHEA ELAINE PALMORE, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) **Case No. 4:13-cv-00322-MHH** |
| CAROLYN W. COLVIN | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), claimant Alethea Elaine

Palmore seeks judicial review of a final adverse decision of the Commissioner of

Social Security[1] denying her claims for a period of disability and disability

insurance benefits and supplemental security income. After careful review, the

Court remands this action to the Commissioner.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Therefore, she should be substituted for Commissioner Michael J. Astrue as Defendant in this suit. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer affecting the parties' substantial rights must be disregarded.").

**STANDARD OF REVIEW**:

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013) (quoting *Dyer v. Barnhart*, 395 F.2d 1206, 1210 (11th Cir. 2005)).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis,

then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND:

Ms. Palmore filed for disability benefits and supplemental security income on September 23, 2009.  (Doc. 7-6, pp. 2, 6).  She alleges that her disability began on November 3, 2008.  (Doc. 7-3, p. 22).  The Commissioner initially denied these claims, and she requested a hearing before an Administrative Law Judge (ALJ). (Doc. 7-3, pp. 72-77).  The ALJ held a hearing on March 7, 2011.  (Doc. 7-3, pp. 78-104).  The ALJ denied Ms. Palmore's claims on April 13, 2011.  On January 14, 2013, the Appeals Council declined Ms. Palmore's request for review (Doc. 7-3, pp. 1-6), making the Commissioner's decision final and a proper subject of this Court's judicial review.  *See* 42 U.S.C. § 405(g) and § 1383(c)(3).

At the time of the administrative hearing, Ms. Palmore was 49 years old, and she had completed high school.  (Doc. 7-3, pp. 82-85).  She is a certified nursing assistant, and she has a license in private security.  (Doc. 7-3, p. 86).  Ms. Palmore has past work experience as a fast food worker, poultry plant laborer, shift manager, housekeeper, and parts assembler.  (Doc. 7-3, p. 25).

In his decision, the ALJ determined that Ms. Palmore met the insured status requirements of the Act and had not engaged in substantial gainful activity since November 3, 2008, the alleged onset date.  (Doc. 7-3, p. 22).  The ALJ then found

that Ms. Palmore suffers from the following severe impairments: chronic pain syndrome, anemia, and gastroesophageal reflux disease (GERD); however, he determined that these impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*.).  Next, the ALJ determined that Ms. Palmore retains the residual functional capacity (RFC) to perform light work, "except she cannot work around unprotected heights; can have no concentrated exposure to extremes of temperature, humidity, gases or fumes; [and] cannot constantly operate foot or leg controls."  (Doc. 7-3, p. 23).

Based on this RFC assessment, the ALJ found that Ms. Palmore cannot perform her past relevant work.  (Doc. 7-3, p. 26).  Considering Ms. Palmore's age, education, work experience and RFC, the ALJ determined that there are jobs in significant numbers in the national economy that she can perform.  (*Id*.).  Thus, the ALJ concluded that Ms. Palmore is not disabled as defined in the Act, and he denied Ms. Palmore's application for benefits.  (Doc. 7-3, p. 27).

## ANALYSIS:

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin*, 533 Fed. Appx. at 930.  "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for

a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart,* 355 F.3d

1272, 1276 (11th Cir. 2003)).  To determine whether a claimant is disabled, the

Social Security Administration applies a five-step sequential analysis.

> This process includes a determination of whether the claimant (1) is
> unable to engage in substantial gainful activity; (2) has a severe and
> medically-determinable physical or mental impairment; (3) has such
> an impairment that meets or equals a Listing and meets the duration
> requirements; (4) can perform his past relevant work, in the light of
> his residual functional capacity; and (5) can make an adjustment to
> other work, in the light of his residual functional capacity, age,
> education, and work experience.

*Gaskin*, 533 Fed. Appx. at 930 (citation omitted).   "The claimant's residual

functional capacity is an assessment, based upon all relevant evidence, of the

claimant's ability to do work despite his impairments." *Id.* at 930 (citing *Lewis v.

Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997)); *see also* 20 C.F.R. §

404.1545(a)(1).

   Ms. Palmore argues that she is entitled to relief from the ALJ's decision

because the ALJ (1) did not rely on a medical source opinion in determining her

RFC; (2) failed to follow the "slight abnormality standard;" and (3) omitted the

required "function-by-function" assessment in his RFC finding.  (Doc. 10, p. 3).

As explained in greater detail below, the Court finds that the ALJ's RFC

determination is not supported by substantial evidence because the record contains

no medical source statement or physician's physical capacities evaluation. Because the Court concludes that the ALJ must make his RFC findings with the assistance of a physical capacities evaluation, the Court does not reach Ms. Palmore's second or third argument on appeal.

The Eleventh Circuit Court of Appeals recently reiterated that in making an RFC assessment, an ALJ "'has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.'" *Castle v. Colvin*, 557 Fed. Appx. 849, 853 (11th Cir. 2014) (quoting *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007)). *Castle* illustrates the type of case in which an ALJ does not need a physician's physical capacities evaluation to determine a claimant's RFC. In *Castle*, the claimant alleged that knee pain prevented him from working. *Id.* at 850. The district court found that the ALJ did not err in rejecting the treating physician's RFC assessment, but the district court remanded the action with instructions to order a consultative examination because the record contained no medical opinion regarding the claimant's RFC in the absence of the treating physician's assessment. *Id.* at 851-52.

Reversing the district court's decision, the Eleventh Circuit held that the record contained substantial evidence to support the ALJ's RFC determination, despite the absence of a consultative evaluation. The Eleventh Circuit observed:

> During the relevant time period between January of 2008 and March of 2009, Mr. Castle did not once visit a physician for his alleged knee pain. When Mr. Castle did visit his primary care physician during the relevant time period, he denied musculoskeletal problems and the doctor noted that he had a normal gait and station. Moreover, Mr. Castle testified at his hearing before the ALJ that he did not seek treatment for his knees until several months after his date last insured. Mr. Castle also admitted, in the function report he completed in November of 2009, that he regularly prepared meals taking up to one and a half hours, mowed the yard for up to four hours, did the laundry, attended church, cared for doves, grocery shopped, and went out to eat. Finally, Dr. Troy Layton, who operated on Mr. Castle's knee in 1998, released Mr. Castle with no work restrictions as of April of 2000.

*Id.* at 853.

The record in this case is unlike the record in *Castle*. Ms. Palmore's impairments are substantially more complex than Mr. Castle's knee impairment.[2] In addition to the severe impairments that the ALJ noted (chronic pain syndrome,

---

[2] The ALJ found that Ms. Palmore's impairments are controlled with medication and that Ms. Palmore "appears to be doing better now that she is taking her medications on a regular basis." (Doc. 7-3, p. 25). The record contains substantial evidence to support the ALJ's opinion in that regard, but that is not the end of the analysis. The ALJ still must determine whether Ms. Palmore's RFC permits her to work despite her impairments—whether they are controlled or not. As discussed below, without a physical capacities assessment from a medical source, the ALJ was not in a position to make this determination given the combination of chronic diseases identified in Ms. Palmore's medical records.

anemia, and gastroesophageal reflux disease (GERD)), Ms. Palmore's records reflect a history of hypertension and chronic kidney disease. Several treatment notes also indicate that Ms. Palmore has congestive heart failure. (Doc. 7-8, pp. 134, 136, 138, 140). In 2010, she visited one clinic monthly for blood pressure monitoring, and she visited another clinic for medical treatment on a number of occasions. Medical records from these clinic visits and from earlier emergency room visits contain a variety of test results and physicians' assessments of Ms. Palmore's health.[3] Ms. Palmore claims that because of her hypertension, she has chest pain, shortness of breath, swelling in her legs, and fatigue. (Doc. 7-3, pp. 93-95). Ms. Palmore testified that her impairments prevent her from performing a number of activities of daily living. For instance, according to Ms. Palmore, she does not drive due to her high blood pressure; she does not grocery shop; she does not cook for her family; she performs few household chores; and, she must lie down or sleep three to four hours in the middle of the day. (Doc. 7-3, pp. 84, 96-97). Finally, unlike *Castle*, the record contains no physician's release indicating that Ms. Palmore can work without restrictions.

---

[3] The record reflects that Ms. Palmore visited the emergency room in August 2008 and July 2009 (Doc. 7-8, pp. 2-15, 16-131). She received treatment at Partners Medical Clinic from March 2010 to June 2010 (Doc. 7-8, pp. 132-141), and she made monthly visits to the Etowah Free Clinic between May 2010 and November 2010 (Doc. 7-9, pp. 2-30). According to Ms. Palmore's medical records, physicians treated her for hypertension, chronic pain, chest pain, leg swelling, chronic kidney disease, congestive heart failure, GERD, and depression.

The extent and nature of Ms. Palmore's alleged disability, "coupled with identifiable diagnoses and symptoms that seems to indicate more than mild impairment," should have "alerted the ALJ to the need for expert guidance regarding the extent of [Ms. Palmore's] residual function capacity to perform [the work identified by the ALJ]." *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 19 (1st Cir. 1996).[4]  If the evidence "suggest[ed] relatively little physical impairment" or if Ms. Palmore's impairments were less complex, the ALJ may have been able to "render commonsense judgment about [Ms. Palmore's] functional capacity even without a physician's assessment." *Id.* at 17-18.  But that is not the case.  Instead, the medical evidence indicates that doctors treated Ms. Palmore for hypertension, chronic pain, chest pain, leg swelling, chronic kidney disease, congestive heart failure, GERD, and depression.  Thus, a physician's physical capacities assessment was required.  *See id.* at 18; *see also McCright v. Colvin*, 2014 WL 1513290 (N.D. Ala. April 11, 2014) (remanding for a medical source statement because the evidence, which demonstrated a longitudinal history

---

[4] In *Manso-Pizarro*, the First Circuit vacated a district court's opinion and instructed the district court to remand the case in order to obtain a physician's functional capacity assessment. *Id.*  In *Castle*, the Eleventh distinguished *Manso-Pizarro* and the district court's reliance on its reasoning.  For instance, the Eleventh Circuit noted that in *Manso-Pizarro*, "the claimant's medical record, involving a serious heart condition and multiple stays at the hospital, was far more complicated than Mr. Castle's." *Castle*, 557 Fed. Appx. at 854.  Although not identical, Ms. Palmore's medical record is far more akin to that in *Manso-Pizarro*, which included treatment for and diagnoses of various conditions similar to Ms. Palmore's heart disease, hypertension, and kidney disease. Indeed, Ms. Palmore's medical record is "far more complicated" than Mr. Castle's alleged knee problems.  *See id.*

of medical treatment for the claimant's back pain, the claimant's testimony that he needed to lie down for over six hours a day and difficulty completing other activities of daily living, and the claimant's complaints of back pain before and after the alleged onset date, prevented the ALJ from making "a commonsense determination of RFC").

**CONCLUSION**:

Based upon the Court's review of the evidence, the Court finds the Commissioner's decision is not supported by substantial evidence. The Court **REMANDS** this action for further findings and proceedings consistent with this opinion. On remand, the ALJ shall order a physical capacities examination of Ms. Palmore prior to conducting an RFC analysis.

**DONE** and **ORDERED** this 15th day of July, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE